Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Brieanne Scully (BS 3711)
bscully@ipcounselors.com
Danielle S. Yamali (DY 4228)
dfutterman@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:     (212) 292-5390
Facsimile:      (212) 292-5391
*Attorneys for Plaintiffs*
*Spin Master Ltd. and Spin Master, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SPIN MASTER LTD. and SPIN MASTER, INC., <br><br> *Plaintiffs* <br><br> v. <br><br> ALVY, AMYUNS, ATRIGGER, BASON888, BOKENUS, CATCHMAIK, CENDA, COLEIFIT, CYMELY, DADIII, DICESNOW, DIYURFEELING, DLUCKY, EASERELAX, ELBEE, FENGHESHUN, FITYLE, FSHGH, G0DBL3SSALL, GLOBAL DISCOUNT WAREHOUSE, GLOBALCAREMARKET, IMIXLOT, KECOOI, LITTIL, LTINTIN, MY ONYX, NOVOTE, OLIOTE, PIEI JKIEWS, PLUSA, PREMIUM SEGMENT, ROSS VARNER INC., RUNFON, SANOHAMI, SEENDOM, SUPERGOGO, TORERO X, TWISTYMAGICALPETZ, UKCG, WOMDEE-DIRECT, XIAOHUOJI, YAOGUAN, YARDOM, YUNCONG.15 and ZHANHONG DIRECT, <br><br> *Defendants* | CIVIL ACTION No. **19-cv-3452 (LGS)** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR DEFAULT JUDGMENT AND A PERMANENT INJUNCTION AGAINST DEFAULTING DEFENDANTS**

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................... 1

II.  PROCEDURAL HISTORY....................................................................................... 2

III. STATEMENT OF FACTS ......................................................................................... 3

IV.  ARGUMENT ........................................................................................................... 4

   A.   Default Judgment is Appropriate as Defaulting Defendants Have Failed to Appear in This Action 4

   B.   Plaintiffs are Entitled to a Permanent Injunction ............................................. 4

   C.   Defaulting Defendants Acted Willfully ............................................................ 8

   D.   Plaintiffs are Entitled to Heightened Statutory Damages .................................. 9

   E.   Plaintiffs are Entitled to a Post-Judgment Asset Restraint, The Transfer of Defaulting Defendants' Frozen Assets and Post-Judgment Interest on Defaulting Defendants' Frozen Assets  16

V.   CONCLUSION ...................................................................................................... 25

i

# TABLE OF AUTHORITIES

## Cases

*Allee v. Medrano*, 416 U.S. 802 (1974) .................................................................................. 6

*Allstar Marketing Group, LLC v. _GB Housewear Store, et al.,* No. 17-cv-7596 (SHS) (S.D.N.Y. July 9, 2018) ............................................................................................................ 16, 18, 25

*All-Star Mktg. Grp., LLC v. Media Brands Co.*, 775 F. Supp. 2d 613 (S.D.N.Y. 2011) .............. 15

*Arrowhead Capital Fin., Ltd. v. Seven Arts Entm't, Inc.*, No. 14 Civ. 6512 (KPF), 2017 U.S. Dist. LEXIS 125068, (S.D.N.Y. Aug. 8, 2017) .................................................................. 23, 24

*Artemide Inc. v. Spero Elec. Corp.,* 2010 U.S. Dist. LEXIS 136870 (E.D.N.Y. Nov. 23, 2010)... 6

*AW Licensing, LLC v. Bao*, 15-CV-1373-KBF, 2016 U.S. Dist. LEXIS 101150 (S.D.N.Y. Aug. 2, 2016) .................................................................................................................................. 12

*Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849 (2d Cir. 1995) ............................................ 9

*Blue v. Cablevision Sys., N.Y. City Corp.*, No. 00-3836, 2006 U.S. Dist. LEXIS 96449 (E.D.N.Y. July 5, 2007) .......................................................................................................................... 17

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (U.S. 1985) ........................................................ 4

*City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114 (2d Cir. 2011) ............................. 4

*Coach, Inc. v. Melendez*, No. 10-cv-6178 (BSJ) (HBP), 2011 U.S. Dist. LEXIS 116842 (S.D.N.Y. Sep. 2, 2011) ........................................................................................................ 9

*Coach, Inc. v. Weng*, 2014 U.S. Dist. LEXIS 79005 (S.D.N.Y. June 7, 2014) ............................ 10

*Cruz v. TD Bank, N.A.*, 711 F.3d 261 (2d Cir. 2013) ................................................................ 17

*CSX Transp., Inc. v. Emjay Envtl. Recycling, LTD.*, No. 12-CV-1865, 2016 U.S. Dist. LEXIS 23014 (E.D.N.Y. Feb. 25, 2016) ......................................................................................... 24

*Dawson v. Krolikowski*, 530 N.Y.S.2d 931 (Sup. Ct. 1988) ...................................................... 18

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) ............................................................. 5

*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90 (2d Cir. 1993) ......................................................... 4

*Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co.*, 807 F.2d 1110 (2d Cir. 1986) ....................... 11

*Gray v. Sanders*, 372 U.S. 368 (1963) ..................................................................................... 6

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155 (2d Cir. 1992) ................ 5

*Gucci Am. Inc. v. Bank of China*, 768 F.3d 122 (2d Cir. 2014) ........................................... 16, 17

*Gucci Am., Inc. v. Curveal Fashion*, No. 09 Civ. 8458 (RJS), 2010 U.S. Dist. LEXIS 5831 (S.D.N.Y. Jan. 20, 2010) ........................................................................................ 15, 18, 21

*Gucci Am., Inc. v. Daffy's Inc.*, 354 F.3d 228 (3d Cir. 2003) ...................................................... 9

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511 (S.D.N.Y. 2004) ..................... 9

*Harris v. Fairweather*, 2012 U.S. Dist. LEXIS 128409 (S.D.N.Y. Sept. 10, 2012) .................... 5

*HICKIES, Inc. v. SHOP1668638 Store a/k/a Professional Shoes Company, et al.,* No. 17-cv-9101 (ER) (S.D.N.Y. May 4, 2018) ............................................................................. 16, 18, 25

*Hounddog Prods., L.L.C. v. Empire Film Group, Inc.*, 826 F. Supp. 2d 619 (S.D.N.Y. 2011) ..... 8

*Ideavillage Prods. Corp. v. 29shyans2012, et al.,* 18-cv-6266 (AT), (S.D.N.Y. Nov. 6, 2018) . 16, 18, 24

*Ideavillage Prods. Corp. v. 711 Market, et al.,* No. 18-cv-7832-JMF (S.D.N.Y. Dec. 12, 2018) ................................................................................................................................. 16, 18, 24

*Ideavillage Prods. Corp. v. Bling Boutique Store, et al.,* No. 16-cv-9039 (KMW) (S.D.N.Y. July 24, 2018) ....................................................................................................... 16, 18, 25

*Ideavillage Prods. Corp. v. Chinafocus, et al.*, No. 17-cv-3894 (RA) (S.D.N.Y. Feb. 9, 2018). 16, 18

*Ideavillage Prods. Corp. v. Dongguan Opete Yoga Wear Manufacturer Co., LTD., et al.*, No. 17-cv-9099 (JMF) (S.D.N.Y. March 1, 2018) ...................................................... 16, 18

*Interpool Ltd. v. Patterson*, No. 89 Civ. 8501 (LAK), 1995 U.S. Dist. LEXIS 2920 (S.D.N.Y. Mar. 13, 1995).................................................................................................................... 17

*JLM Couture, Inc. v. Aimibridal, et al.*, No. 18-cv-1565 (JMF) (S.D.N.Y. June 7, 2018)16, 18, 25

*Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533 (2009) ........................................................ 24

*Loew v. Kolb*, No. 03 Civ. 5064 (RCC), 2003 U.S. Dist. LEXIS 15628 (S.D.N.Y. Sept. 8, 2003) ....................................................................................................................................... 19

*Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567 (S.D.N.Y. 2002) .............. 15

*Louis Vuitton Malletier v. Carducci Leather Fashions, Inc.*, 648 F. Supp. 2d 501 (S.D.N.Y. 2009) ............................................................................................................... 11, 12

*Mattel, Inc. v. 1994_honeymoon, et al.*, No. 18-cv-10427-KPF (S.D.N.Y. Mar. 27, 2019)......... 15

*Mattel, Inc. v. 276470, et al.*, No. 18-cv-10440-KPF (S.D.N.Y. Mar. 27, 2019) ........................ 15

*Mattel, Inc. v. 86755, et al.*, No. 18-cv-8825-JSR (S.D.N.Y. Dec. 17, 2018) ................. 16, 18, 24

*Mint, Inc. v. Iddi Amad*, 2011 U.S. Dist. LEXIS 49813 (S.D.N.Y. May 9, 2011) ........................ 7

*Mitchell v. Lyons Prof'l Servs., Inc.*, 727 F. Supp. 2d 120 (E.D.N.Y. 2010)............................... 24

*Montblanc Simplo GMBH v. Colibri Corp.*, 692 F. Supp. 2d 245 (E.D.N.Y. 2010)................. 7, 8

*Moose Toys Pty Ltd., et al. v. 963, et al.*, No. 18-cv-2187-VEC (S.D.N.Y. Nov. 30, 2018). 16, 18, 24

*N.A.S. Imp. Corp. v. Chenson Enters.*, 968 F.2d 250 (2d Cir. 1992)............................................. 9

*Nike, Inc. v. Top Brand Co.*, 00 Civ. 8179 (KMW) (RLE), 2006 U.S. Dist. LEXIS 76543 (S.D.N.Y. Feb. 27, 2006) ............................................................................................... 14

*Nike, Inc. v. Wu*, 349 F. Supp. 3d 310 (S.D.N.Y. 2018) ........................................................ 15, 18

*Northern Mariana Islands v. Millard*, 845 F. Supp. 2d 579 (S.D.N.Y. 2012) ............................ 23

*NY City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305 (S.D.N.Y. 2010) ....... 8

*Off-White LLC v. A445995685, et al.*, No. 18-cv-2099-LGS-KNF (S.D.N.Y. Nov. 16, 2018) .. 16, 18, 24

*Off-White v. ^_^Warm House^_^ STORE, et al.*, No. 17-cv-8872-GBD-GWG (S.D.N.Y. Jan. 17, 2019) ........................................................................................................................... 24

*Ontel Prods. Corp. v. Airbrushpainting Makeup Store*, 17-cv-871 (KBF), 2017 Dist. LEXIS 221489 (S.D.N.Y. June 29, 2017)................................................................................. 14

*Ontel Prods. Corp. v. Auto Mall, et al.*, No. 17-cv-5190 (AT) (S.D.N.Y. Nov. 27, 2017) .... 16, 18

*Ontel Products Corp. v. Airbrushpainting Makeup, et al.* No. 17-cv-871 (KBF) (S.D.N.Y. May 31, 2017) .......................................................................................................................... 21

*Pashaian v. Eccelston Props., Ltd.*, 88 F.3d 77 (2d Cir. 1996) ................................................... 17

*Pearson Educ., Inc. v. Vegara*, No. 09 Civ. 6832 (JGK)(KNF), 2010 U.S. Dist. LEXIS 101597 (S.D.N.Y. Sept. 27, 2010)................................................................................................. 7

*Pitbull Prods., Inc. v. Universal Netmedia, Inc.*, No. 07 Civ. 1784 (RMR) (GWG), 2007 U.S. Dist. LEXIS 82201 (S.D.N.Y. Nov. 7, 2007) ................................................................. 15

*Rodgers v. Anderson*, No. 04 Civ. 1149 (RJH) (AJP), 2005 U.S. Dist. LEXIS 7054 (S.D.N.Y. Apr. 26, 2005) ................................................................................................................. 15

*Rolex Watch U.S.A., Inc. v. Brown*, No. 01 Civ. 9155 (JGK) (AJP), 2002 U.S. Dist. LEXIS 10054 (S.D.N.Y. June 5, 2002)....................................................................................... 15

iii

*Rovio Entertainment Ltd. and Rovio Animation Oy v. Angel Baby Factory d/b/a Angelbaby_Factory, et al.,* No. 17-cv-1840 (KPF) (S.D.N.Y. Sept. 13, 2017)................. 16, 18

*Rovio Entertainment Ltd. and Rovio Animation Oy v. Best Baby and Kid Store, et al.,* No. 17-cv-4884 (KPF) (S.D.N.Y. June 28, 2018)........................................................ 16, 18, 25

*S.E.C. v. Colonial Inv. Mgmt. LLC,* No. 07 Civ. 8849 (PKC), 2010 U.S. Dist. LEXIS 108063 (S.D.N.Y. Oct. 6, 2010) .................................................................................... 24

*Salinger v. Colting,* 607 F.3d 68 (2d Cir. 2010) ................................................................ 5

*Sequa Capital Corp. v. Nave,* 921 F. Supp. 1072 (S.D.N.Y. 1996)................................... 19

*Spin Master Ltd. v. Alan Yuan's Store,* 325 F. Supp. 3d 413 (S.D.N.Y. 2018) ..................... 16, 18

*Spin Master Ltd. v. Alan Yuan's Store,* No. 17-cv-7422 (DLC), 2018 U.S. Dist. LEXIS 109333 (S.D.N.Y. June 29, 2018)............................................................................. 20, 21

*Steele v. Bell,* 2014 U.S. Dist. LEXIS 44976 (S.D.N.Y. Mar. 3, 2014) ......................... 6

*Tapestry, Inc., et al. v. baoqingtianff, et al.,* No. 18-cv-7650-PAE (S.D.N.Y. Jan. 8, 2019) 16, 18, 24

*Tiffany (NJ) Inc. v. Luban,* 282 F. Supp. 2d 123 (S.D.N.Y, 2003) .................................... 8

*Tiffany (NJ) LLC v. Dong,* 2013 U.S. Dist. LEXIS 114986 (S.D.N.Y. Aug. 9, 2013)................ 23

*Tiffany (NJ) LLC v. Forbse,* No. 11-cv-4976 (NRB), 2015 US Dist. LEXIS 129647 (S.D.N.Y. Sep. 22, 2015) ........................................................................................... 15, 17, 18

*Trans World Airlines, Inc. v. Hughes,* 449 F.2d 51 (2d Cir. 1971) .................................. 5

*Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.,* 996 F.2d 1366 (2d Cir. 1993)........................ 8

*Wow Virtual Reality, Inc. v. BIENBEST, et al.,* No. 18-cv-3305-VEC (S.D.N.Y. Dec. 5, 2018) 16, 18, 24

*WowWee Group Limited, et al. v. A249345157, et al.,* No. 17-cv-9358 (VEC) (S.D.N.Y. July 31, 2018) .................................................................................................... 16, 18, 25

## Statutes

15 U.S.C. § 1116 ...................................................................................................... 5
15 U.S.C. § 1117 .................................................................................................... 10
17 U.S.C. § 502 ........................................................................................................ 5
17 U.S.C. § 504 ...................................................................................................... 13
28 U.S.C. § 1961 .................................................................................................... 12
28 U.S.C.S. § 1651 ................................................................................................. 21
Fed. R. Civ. P. 55 ................................................................................................. 1, 4
Fed. R. Civ. P. 69 ............................................................................................... 17, 22
Fed. R. Evid. 1006 ................................................................................................. 13
N.Y. C.P.L.R. § 5201 ............................................................................................. 24
N.Y. C.P.L.R. § 5222 ......................................................................................... 17, 18
N.Y. C.P.L.R. § 5225 ............................................................................................. 23
N.Y. C.P.L.R. §§ 5201-5253 ................................................................................... 17

**GLOSSARY**

| Term | Definition | Docket Entry Number |
|---|---|---|
| **Plaintiffs or Spin Master** | Spin Master Ltd. and Spin Master, Inc. | N/A |
| **Defendants** | ALVY, Amyuns, Atrigger, bason888, BokenUS, Catchmaik, Cenda, COLEIFIT, Cymely, Dadiii, dicesnow, DIYurfeeling, DLUCKY, EASERELAX, ElBee, fengheshun, fityle, Fshgh, G0DBL3SSALL, Global Discount Warehouse, GlobalCareMarket, imixlot, kecooi, LittiL, LTINTIN, My ONYX, NOVOTE, Oliote, Piei Jkiews, plusA, Premium Segment, Ross Varner Inc., RUNFON, SANOHAMI, SEENDOM, supergogo, Torero X, twistymagicalpetz, UKCG, Womdee-Direct, Xiaohuoji, Yaoguan, Yardom, Yuncong.15 and Zhanhong Direct | N/A |
| **Defaulting Defendants** | Amyuns, Atrigger, bason888, BokenUS, Catchmaik, Cenda, Cymely, Dadiii, dicesnow, DIYurfeeling, DLUCKY, EASERELAX, fengheshun, Fshgh, GlobalCareMarket, imixlot, kecooi, LittiL, LTINTIN, NOVOTE, Oliote, Piei Jkiews, plusA, RUNFON, SANOHAMI, SEENDOM, supergogo, Torero X, twistymagicalpetz, UKCG, Womdee-Direct, Xiaohuoji, Yaoguan, Yardom, Yuncong.15 and Zhanhong Direct | N/A |
| **Complaint** | Plaintiffs' Complaint filed on April 18, 2019 | 7 |
| **Application** | Plaintiffs' *Ex Parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery filed on April 18, 2019 | 13-16 |
| **Harrs Dec.** | Declaration of Chris Harrs in Support of Plaintiffs' Application | 16 |
| **Scully Dec.** | Declaration of Brieanne Scully in Support of Plaintiffs' Application | 15 |
| **TRO** | 1) Temporary Restraining Order; 2) Order Restraining Merchant Storefronts and Defendants' Assets with the Financial Institutions, 3) Order to Show Cause Why a Preliminary Injunction Should Not Issue; 4) Order Authorizing Bifurcated and Alternative Service and 5) | 17 |

| | | |
|---|---|---|
| | Order Authorizing Expedited Discovery entered on April 24, 2019 | |
| **PI Show Cause Hearing** | May 23, 2019 hearing to show cause why a preliminary injunction should not issue. | N/A |
| **PI Order** | May 28, 2019 Preliminary Injunction Order | 30 |
| **Amazon** | Amazon.com, a Seattle, Washington-based, online marketplace and e-commerce platform owned by Amazon.com, Inc., a Delaware corporation, that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their retail products, which, upon information and belief, primarily originate from China, directly to consumers worldwide and specifically to consumers residing in the U.S., including New York | N/A |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as Amazon, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them | N/A |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in products, including Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them | N/A |
| **Spin Master Products** | Innovative children's lifestyle products and toys under Plaintiffs' own well-known brands, including Twisty Petz, Flutterbye Fairy, Bunchems and Hatchimals, as well as under their licensed properties, such as Paw Patrol and Air Hogs | N/A |
| **Twisty Petz Mark** | U.S. Trademark Registration No. 5,514,561 for "TWISTY PETZ" for a variety of goods in Class 28 | N/A |
| **Twisty Petz Work** | U.S. Copyright Registration No. VA 1-305-408, covering the Twisty Petz Packaging Artwork & Collectors' Guides | N/A |
| **Twisty Petz Products** | Bejeweled pets that transform into sparkly bracelets, necklaces or backpack accessories with a few simple twists | N/A |

| | | |
|---|---|---|
| **Counterfeit Products** | Products bearing or used in connection with the Twisty Petz Mark and/or Twisty Petz Work, and/or products in packaging and/or containing labels and/or hang tags bearing the Twisty Petz Mark and/or Twisty Petz Work, and/or bearing or used in connection with Mark and/or artwork that are confusingly or substantially similar to the Twisty Petz Mark and/or Twisty Petz Work and/or products that are identical or confusingly or substantially similar to the Twisty Petz Products | N/A |
| **Infringing Listings** | Defendants' listings for Counterfeit Products | N/A |
| **Financial Institutions** | Any banks, financial institutions, credit card companies and payment processing agencies, such as Amazon.com, Inc., Amazon Payments, Inc. ("Amazon Pay"), PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), PingPong Global Solutions, Inc. ("PingPong") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants | N/A |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) | N/A |
| **Defendants' Financial Accounts** | Defendants' Assets from any and all accounts associated with or utilized by any Defendant or any Defendant's Merchant Storefront(s) and User Account(s) (whether said account is located in the U.S. or abroad) | N/A |
| **Defendants' Frozen Accounts** | Defendants' Financial Accounts that were and/or are attached and frozen or restrained by the Financial Institutions pursuant to the TRO and/or PI Order, or which are attached and frozen or restrained pursuant to any future order entered by the Court in this Action | N/A |
| **Defendants' Frozen Assets** | Defendants' Assets from Defendants' Financial Accounts that were and/or are attached and frozen or restrained pursuant to the TRO and/or PI Order, or which are attached and frozen or restrained pursuant to any future order entered by the Court in this Action | N/A |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly by Amazon.com, Inc., such as Amazon, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for | N/A |

| | sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise | |
|---|---|---|
| **Plaintiffs' Motion for Default Judgment** | Plaintiffs' Application for an Order to Show Cause Why Default Judgment and a Permanent Injunction Should Not be Entered Against Defaulting Defendants filed on September 17, 2019 | TBD |
| **Scully Aff.** | Affidavit by Brieanne Scully in Support of Plaintiffs' Motion for Default Judgment | TBD |

# I.    __INTRODUCTION__[1]

1.     In accordance with Your Honor's Individual Rules and Practices in Civil Cases, the Court's Individual Local Civil Rule 55.2(b) and Federal Rule of Civil Procedure 55(b)(2), Plaintiffs respectfully submit that entry of default judgment against Defaulting Defendants is appropriate and seek the following relief against Defaulting Defendants: 1) entry of a final judgment and permanent injunction by default; 2) individual statutory damages awards pursuant to 15 U.S.C. § 1117(c) and/or 17 U.S.C. § 504(c) plus post-judgment interest calculated pursuant to the statutory rate, against the following defendants:

    a. an award of $50,000.00 in statutory damages against the following twenty-four (24) Defaulting Defendants, totaling $1,200,000.00: GlobalCareMarket, Piei Jkiews, Oliote, Yuncong.15, Torero X, imixlot, Yaoguan, Amyuns, dicesnow, Cenda, UKCG, kecooi, RUNFON, Zhanhong Direct, plusA, fengheshun, Atrigger, Dadiii, Yardom, BokenUS, Catchmaik, LittiL, EASERELAX and Cymely;

    b. an award of $100,000.00 in statutory damages against the following eight (8) Defaulting Defendants, totaling $800,000.00: SEENDOM, SANOHAMI, DLUCKY, bason888, Xiaohuoji, LTINTIN, DIYurfeeling and Fshgh;

    c. an award of $150,000.00 in statutory damages against the following three (3) Defaulting Defendants, totaling $450,000.00: NOVOTE, supergogo and twistymagicalpetz;

---

[1] Where a defined term is referenced herein and not defined herein, the defined term should be understood as it is defined in the Glossary.

(3) a post-judgment asset restraining order and (4) an order authorizing the release and transfer of Defaulting Defendants' Frozen Assets to satisfy the damages awarded to Plaintiffs.[2]

## II.    PROCEDURAL HISTORY

Plaintiffs filed the Application, including the Complaint, on April 18, 2019. (Scully Aff., ¶ 9.)  Subsequently, the Court entered the TRO on April 24, 2019. *Id.* at ¶ 11.  The TRO specifically authorized service by electronic means.[3] *Id.* at ¶ 13.   On May 8, 2019, pursuant to the TRO, Plaintiffs served each and every Defendant with the Summons, Complaint, TRO and all papers filed in support of Plaintiffs' Application. *Id.* at ¶ 14.   On May 23, 2019, the Court held the PI Show Cause Hearing and Defendants COLEIFIT and Yardom were present. *Id.* at ¶ 16. Subsequently, on May 28, 2019, the Court entered a PI Order against all Defendants[4] mirroring the terms of the TRO and extending through the pendency of the Action. *Id.* at ¶ 17.

On July 16, 2019, the Court issued an Order directing Plaintiffs to move for default judgment by September 17, 2019. *Id.* at ¶ 19. On September 10, 2019, Plaintiffs filed an application for a Clerk's Certificate of Default against Defaulting Defendants and, subsequently, on September 11, 2019, the Clerk of the Court entered a Certificate of Default against Defaulting Defendants. *Id.* at ¶¶ 20-21, Ex. D.   Accordingly, Plaintiffs respectfully submit the instant Motion for Default Judgment.

---

[2] Through this Motion for Default Judgment, in addition to permanent injunctive relief, Plaintiffs only seek damages for their First, Second and Fourth Causes of Action (Trademark Counterfeiting and Infringement and Copyright Infringement). Plaintiffs do not seek monetary relief in connection with the remaining causes of action plead in the Complaint.

[3] The TRO specifically ordered that service shall be made on Defendants and deemed effective as to all Defendants if it was completed by the following means:  1) delivery of (i) PDF copies of the TRO together with the Summons and Complaint, or (ii) a link to a secure website (including Nutstore, a large mail link created through Rmail.com and via website publication through a specific page dedicated to this Lawsuit accessible through ipcounselorslawsuit.com) where each Defendant will be able to download PDF copies of the TRO together with the Summons and Complaint, and all papers filed in support of Plaintiffs' Application seeking the TRO to Defendants' e-mail addresses to be determined after having been identified by Amazon.com, Inc. pursuant to Paragraph V(C) of the TRO.

[4] With certain modifications for Defendant Yardom.

2

### III.   <u>STATEMENT OF FACTS</u>

Plaintiffs Spin Master are part of a large, multinational toy and entertainment company started in 1994 that designs and sells the Spin Master Products. Plaintiffs promote and sell the Spin Master Products throughout the United States and the world through major retailers, quality toy stores and online marketplaces. (Harrs Dec., ¶¶ 3-4.) One of Spin Master's most recent and successful products is Twisty Petz, which are bejeweled pets that transform into sparkly bracelets, necklaces or backpack accessories with a few simple twists. *Id.* at ¶ 6. Plaintiffs' Twisty Petz Products have achieved tremendous success and were named one of the "hottest toys for 2018" by the *New York Post* and included in *Amazon's 2018 Holiday Toy List*. *Id.* at ¶ 7.

While Plaintiffs have gained significant common law trademark and other rights in their Twisty Petz Products, through use, advertising and promotion, Plaintiffs have also protected their valuable rights by filing for and obtaining a federal trademark registration. *Id.* at ¶¶ 9-11. In addition, Spin Master also owns both registered and unregistered copyrights related to the Twisty Petz Products. *Id.* at ¶¶ 12-13.

Defaulting Defendants are located in China but conduct business in the U.S., including within this judicial district, and other countries through their User Accounts and Merchant Storefronts with and on Amazon. (Complaint, Ex. D.) Plaintiffs' counsel investigated and researched manufacturers, wholesalers, and/or third-party merchants offering for sale and/or selling Counterfeit Products on Amazon. (Harrs Dec., ¶ 21; Scully Dec., ¶ 12.) Through their Merchant Storefronts, without Plaintiffs' authorization or consent, Defaulting Defendants were and/or are currently manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products. (Harrs Dec., ¶¶ 22-24; Complaint, Ex. D.)

3

## IV.   ARGUMENT

### A.  DEFAULT JUDGMENT IS APPROPRIATE AS DEFAULTING DEFENDANTS HAVE FAILED TO APPEAR IN THIS ACTION

Federal Rule of Civil Procedure 55(b) provides for a court-ordered default judgment following the entry of default by the court clerk under Rule 55(a).  "It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011).  Ultimately, the entry of a default judgment is entrusted to the sound discretion of the district court. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).  Moreover, as fully briefed in the Application and as the Court already acknowledged, the Court has personal jurisdiction over Defaulting Defendants. (*See* TRO and PI Order.) *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-476 (U.S. 1985).  Therefore, Plaintiffs respectfully submit that the Court should enter default judgment against each and every Defaulting Defendant since Defaulting Defendants failed to Answer or otherwise appear in this Action[5] and Plaintiffs' requests for damages are reasonable and supported by evidence. (Scully Aff., ¶¶ 23-29.)

### B.  PLAINTIFFS ARE ENTITLED TO A PERMANENT INJUNCTION

Plaintiffs respectfully request that the Court permanently enjoin Defaulting Defendants from any further counterfeiting and/or infringement of Plaintiffs' Twisty Petz Mark and Twisty Petz Work for the reasons detailed below, coupled with the Court's earlier findings on the same issues in its entrance of the TRO and PI Order.  By virtue of Defaulting Defendants' defaults, Plaintiffs' well-plead factual allegations set forth in the Complaint, except those relating to the

---

[5] Defendant Yardom appeared through counsel, however, on August 30, 2019 counsel filed a motion to withdraw. (Dkt. 98.) On September 3, 2019, the Court denied the motion and ordered Defendant Yardom to retain new counsel or default. (Dkt. 100.) To date, Defendant Yardom has not obtained new counsel nor notified the Court of its intention to obtain new counsel.

amount of damages, are taken as true. *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 70 (2d Cir. 1971); *see also Greyhound Exhibit group, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) *cert. denied*, 113 S.Ct. 1049 (1993).

A district court has authority under the Lanham Act and the Copyright Act to grant injunctive relief to prevent further violations of Plaintiffs' trademark and copyrights. 15 U.S.C. § 1116, 17 U.S.C. § 502.  Furthermore, a district court has the authority to grant a permanent injunction on a motion for default judgment.  *See*, *e.g.*, *Harris v. Fairweather*, 11-cv-2152 (PKC) (AJP), 2012 U.S. Dist. LEXIS 128409, at *38-40 (S.D.N.Y. Sep. 10, 2012) (holding that in a default situation, permanent injunctive relief was appropriate under the Lanham Act taking the complaint's allegations as true).  Here, since Defaulting Defendants' defaults constitute admissions of liability and Plaintiffs successfully established their claims for trademark infringement and counterfeiting and copyright infringement, Plaintiffs respectfully submit that a permanent injunction against Defaulting Defendants should be entered.[6]

Specifically, a permanent injunction may be granted where a plaintiff demonstrates that it has succeeded on the merits and: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010) (extending the *eBay* standard to copyright injunctions).  In intellectual property actions, permanent injunctions are normally granted when there is "a threat

---

[6] As detailed at length in the Application and omitted here for brevity, Plaintiffs have demonstrated success on their uncontroverted claims for trademark counterfeiting and infringement and copyright infringement against Defaulting Defendants. *See* Application; *see also* TRO and PI Order.

5

of continuing violations." *Steele v. Bell*, 11-cv-9343 (RA) (RLE), 2014 U.S. Dist. LEXIS 44976, at *22 (S.D.N.Y. Mar. 3, 2014).   Here, as plead in the Complaint and supported by the uncontroverted evidence, Defaulting Defendants infringed Plaintiffs' Twisty Petz Mark and Twisty Petz Work by, *inter alia*, willfully and knowingly advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products, thereby causing irreparable injury to Plaintiffs. (Complaint, Ex. D.)   While Amazon's compliance with the TRO and PI Order – insofar as it has frozen the identified User Accounts and Merchant Storefronts owned by Defaulting Defendants – has prevented further sales of Counterfeit Products by Defaulting Defendants on Amazon during the pendency of this action, there remains a serious possibility that Defaulting Defendants will continue to infringe Plaintiffs' intellectual property rights should such restraints be lifted. *Allee v. Medrano*, 416 U.S. 802, 810-11 (1974) ("It is settled that an action for an injunction does not become moot merely because the conduct complained of has terminated, if there is a possibility of recurrence, since otherwise the defendants 'would be free to return to '[their] old ways.''") (citing *Gray v. Sanders*, 372 U.S. 368, 376 (1963)) (internal quotation marks omitted).

While irreparable harm is no longer presumed, courts have issued permanent injunctions when intellectual property rights holders have shown a potential loss of goodwill and control over their trade dress and/or trademark(s).   *See, e.g.*, *Artemide Inc. v. Spero Elec. Corp.,* 09-cv-1110 (DRH) (ARL), 2010 U.S. Dist. LEXIS 136870 at *9 (E.D.N.Y. Nov. 23, 2010) (finding irreparable harm where likelihood of confusion as to source and likelihood of injury to reputation were shown).   Here, not only have Plaintiffs suffered lost profits as a result of Defaulting Defendants' competing, substandard Counterfeit Products, but Defaulting Defendants' actions have caused irreparable harm to Plaintiffs' goodwill and reputations as well as to the goodwill and reputations

6

associated with their Twisty Petz Mark, Twisty Petz Work and Twisty Petz Products. (Harrs Dec., ¶ 28.)  Further, because of Defaulting Defendants' failures to appear in this action, Plaintiffs were unable to obtain complete and accurate information regarding the actual profits derived from Defaulting Defendants' sales of Counterfeit Products, making Plaintiffs' actual damages effectively impossible to measure. (Scully Aff., ¶¶ 23-33.)  *See*, *e.g., Mint, Inc. v. Iddi Amad*, 2011 U.S. Dist. LEXIS 49813 at *10 (S.D.N.Y. May 9, 2011) (finding irreparable harm where "determining the amount of damages from [defendant's] infringing conduct [is] especially difficult, if not impossible").

Given such injury to Plaintiffs' goodwill and reputations, as well as the absence in the record of any assurance against Defaulting Defendants' continued violation of Plaintiffs' Twisty Petz Mark and Twisty Petz Work, monetary damages alone are inadequate to compensate Plaintiffs for the damage they have incurred and will continue to incur if an injunction is not entered.  A showing that there is no adequate remedy at law "is satisfied where the record contains no assurance against defendant's continued violation" of a plaintiff's rights. *Montblanc Simplo GMBH v. Colibri Corp.*, 692 F. Supp. 2d 245, 259 (E.D.N.Y. 2010).  When a default judgment is entered, "[a] court may infer from a defendant's default that it is willing to, or may continue its infringement." *Pearson Educ., Inc. v. Vegara,* No. 09 Civ. 6832 (JGK)(KNF), 2010 U.S. Dist. LEXIS 101597, at *12 (S.D.N.Y. Sept. 27, 2010) (internal citations omitted), adopted by, Order at Dkt. 21 (S.D.N.Y. May 11, 2011).  As discussed above, Defaulting Defendants' failure to participate in this action emphasizes that Defaulting Defendants have no intention of ceasing their wrongful conduct, namely continued infringement and counterfeiting of Plaintiffs' Twisty Petz Mark and Twisty Petz Work.  Since Plaintiffs demonstrated a credible threat of future infringement and cannot be compensated properly with monetary relief alone, they respectfully submit that the

requested injunction is necessary to fully redress the irreparable injury that they have suffered due to Defaulting Defendants' illegal and infringing actions. *Hounddog Prods., L.L.C. v. Empire Film Group, Inc.*, 826 F. Supp. 2d 619, 633 (S.D.N.Y. 2011) ("Given the significant threat of future infringement, Plaintiffs cannot be compensated with monetary relief alone.").

Further, the balance of hardships unquestionably and overwhelmingly favors Plaintiffs since they have suffered and will continue to suffer irreparable harm to their businesses, profits, goodwill and reputations as a result of Defaulting Defendants' willful and knowing sales of Counterfeit Products. (Harrs Dec, ¶ 28.)  Additionally, the public interest is clearly served by a permanent injunction, as "the public has an interest in not being deceived – in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010) (granting a motion to enjoin the defendant from any further trademark violations); *see also Montblanc*, 692 F. Supp. 2d at 259.  Here, the public has an interest in being able to rely on the high quality of the Twisty Petz Products bearing the Twisty Petz Mark and Twisty Petz Work.

## C. DEFAULTING DEFENDANTS ACTED WILLFULLY

Since Defaulting Defendants failed to appear in this action, no further analysis is required into willfulness because, and axiomatically, infringement is deemed willful "[b]y virtue of the default[.]" *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003).  Nevertheless, Plaintiffs respectfully submit that Defaulting Defendants unequivocally engaged in willful counterfeiting for the following reasons.

The standard for willfulness "is simply whether the defendant had knowledge that its conduct represented infringement or perhaps recklessly disregarded the possibility." *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1382 (2d Cir. 1993).  Such knowledge may be

actual or constructive and may be inferred from defendant's conduct rather than proven directly. *See N.A.S. Imp. Corp. v. Chenson Enters.*, 968 F.2d 250, 252 (2d Cir. 1992) (holding that for "the purpose of awarding enhanced statutory damages," the knowledge component of willfulness "need not be proven directly but may be inferred from the defendant's conduct."). First, in the instant action, the Counterfeit Products contain marks and/or artwork that are identical to Plaintiffs' Twisty Petz Mark and/or Plaintiffs' Twisty Petz Work. (Complaint, Ex. D) *See also Coach, Inc. v. Melendez*, No. 10-cv-6178 (BSJ) (HBP), 2011 U.S. Dist. LEXIS 116842, at *12-13 (S.D.N.Y. Sep. 2, 2011) ("Because the marks used by defendants on their products are virtually identical to the Coach Registered Trademarks, the conclusion is inescapable that defendants' infringement and counterfeiting is intentional."). Second, the undisputed evidence demonstrates that none of the Counterfeit Products sold by Defaulting Defendants were purchased from Plaintiffs. (Harrs Dec., ¶ 24) S*ee also Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (finding defendants to have acted willfully due in part to their failure to take any measures to verify the authenticity of the infringing product); *Gucci Am., Inc., v. Duty Free Apparel*, *Ltd.*, 315 F. Supp. 2d 511, 521 (S.D.N.Y. 2004) ("'Selling products acquired outside the customary chain of retail distribution and without the usual authenticating documentation' is a 'high risk business.'") (quoting *Gucci Am., Inc. v. Daffy's Inc.*, 354 F.3d 228, 245 (3d Cir. 2003) ) (internal quotation marks omitted). Thus, the uncontradicted evidence demonstrates that Defaulting Defendants unequivocally engaged in willful counterfeiting activities. (Complaint, Ex. D.)

### D.  PLAINTIFFS ARE ENTITLED TO HEIGHTENED STATUTORY DAMAGES

Both the Lanham Act and the Copyright Act allow a plaintiff to elect either statutory damages or actual damages for willful infringement. 15 U.S.C. § 1117(c); 17 U.S.C. § 504(c). The Lanham Act provides that, at any time before final judgment is rendered, a trademark owner may

elect to recover an award of statutory damages, rather than actual damages, for the use of a counterfeit mark in connection with goods or services in the amount of: (1) "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just" or (2) if the use of the counterfeit mark is found to be willful, up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c).  Whereas, Section 504(c) of the Copyright Act allows a copyright owner to elect statutory damages in the amount of "not less than $750 or more than $30,000 as the court considers just" with respect to any one work.  Alternatively, where a court finds willful infringement, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000.00." 17 U.S.C. § 504(c)(l)-(2).

Congress enacted the statutory damages remedy in trademark counterfeiting cases because evidence of a counterfeiter's profits is almost impossible to ascertain since "records are frequently nonexistent, inadequate, or deceptively kept." *Gucci Am., Inc.*, 315 F Supp. 2d at 520.  *See also Coach, Inc. v. Weng*, 2014 U.S. Dist. LEXIS 79005, at *41 (S.D.N.Y. June 7, 2014) ("Section 1117(c) of the Lanham Act was created to give victims of trademark infringement and unfair competition an avenue for recovering damages when a defendant hides, alters, or destroys business records.").  Given Defaulting Defendants' propensities to conceal their identities, disappear and destroy or hide any evidence or records of their counterfeiting and infringing actions, and that to date, no Defaulting Defendants have appeared, answered or otherwise responded to the Complaint, Plaintiffs cannot ascertain Defaulting Defendants' actual profits. (Scully Dec., ¶¶ 10-11, 22-23; Scully Aff., ¶¶ 23-33.)  Simply put, this case presents the exact circumstances that Congress envisioned in its enactment of Section 1117(c).

In making a determination of appropriate statutory damages awards, under both Section 504 of the Copyright Act and Section 1117(c) of the Lanham Act, courts consider the following factors under Section 504(c) of the Copyright Act: "(1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright [or trademark]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant." *Gucci Am., Inc.*, 315 F. Supp. 2d at 520 (quoting *Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986)) (internal quotation marks omitted); *Louis Vuitton Malletier v. Carducci Leather Fashions, Inc.*, 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009) ("In the absence of any guidelines for determining the appropriate award in a case involving willful trademark violations, courts often have looked for guidance to the better developed case law under the Copyright Act, 17 U.S.C. § 504(c), which permits an award of statutory damages for willful copyright infringement.").

With respect to the first, second and sixth factors, Defaulting Defendants' propensities to secrete evidence pertaining to sales and profits – along with their failure to appear, answer or otherwise respond to the Complaint or comply with the expedited discovery ordered in the TRO and PI Order – have made it impossible to determine Defaulting Defendants' profits, quantify any expenses that Defaulting Defendants may have saved by infringing Plaintiffs' Twisty Petz Mark and/or Plaintiffs' Twisty Petz Work or assess any revenues lost by Plaintiffs as a result of Defaulting Defendants' infringing and counterfeiting activities. (Scully Dec., ¶¶ 10-11, 22-23; Scully Aff., ¶¶ 23-33.)  Thus, these three factors support a higher statutory damage award for Plaintiffs.  *See AW Licensing, LLC v. Bao*, 15-CV-1373-KBF, 2016 U.S. Dist. LEXIS 101150, at

*7 (S.D.N.Y. Aug. 2, 2016) ("[C]ourts have supported an inference of a broad scope of operations in cases dealing specifically with websites that ship and sell to a wide geographic range," like Defendants' User Accounts and Merchant Storefronts in this Action).

The third factor – the value of Plaintiffs' Twisty Petz Mark and Twisty Petz Work – also weighs in favor of increased statutory damages awards for Plaintiffs against Defaulting Defendants.   Here, Plaintiffs established that the Twisty Petz Products achieved worldwide recognition and success as a result of Plaintiffs' efforts in building up and developing consumer recognition, awareness and goodwill in their Twisty Petz Products, Twisty Petz Mark and Twisty Petz Work. (Harrs Dec., ¶¶ 7, 14-18.)  By virtue of the foregoing, Plaintiffs amassed enormous value in the Twisty Petz Mark and Twisty Petz Work, and the Twisty Petz Mark and Twisty Petz Work identify Plaintiffs as the exclusive source of the Twisty Petz Products to which the Twisty Petz Mark and Twisty Petz Work are applied.   Therefore, the remaining factors also support significant statutory damages awards against Defaulting Defendants.  Particularly where, like here, Defaulting Defendants acted willfully, "a statutory award should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others." *Louis Vuitton Malletier*, 648 F. Supp. 2d at 504.

Plaintiffs seek statutory damages awards against each and every Defaulting Defendant.[7] Since Defaulting Defendants have defaulted, and therefore have not provided any evidence of their purchases or sales of Counterfeit Products, the amount of Defaulting Defendants' profits is unknown. (Scully Aff., ¶¶ 23-33.)  Therefore, Plaintiffs are deprived of the ability to prove a specific amount of actual damages and instead have been left with no choice but to seek an award

---

[7] Plaintiffs respectfully submit that they are entitled to post-judgment interest calculated pursuant to the statutory rate. "Interest shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a).

of statutory damages.  Plaintiffs' respectful requests for statutory damages are based upon a combined analysis of the following:  1) the Amazon Discovery, showing the number of sales of Counterfeit Products made by Defaulting Defendants on Amazon and 2) Defaulting Defendants' wrongful use of the Twisty Petz Mark and Twisty Petz Work. (Scully Aff., ¶¶ 25, 29, Ex. E.)[8]

Given that the Lanham Act provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just" (15 U.S.C. § 1117(c)), and similarly, the Copyright Act gives the court discretion to "increase the award of statutory damages to a sum of not more than $150,000.00" for willful infringement (17 U.S.C. § 504(c)(l)-(2)), whichever statute this Court elects to apply, Plaintiffs respectfully seek statutory damages awards against the following Defaulting Defendants:

a.  an award of $50,000.00 in statutory damages against the following twenty-four (24) Defaulting Defendants, totaling $1,200,000.00: GlobalCareMarket, Piei Jkiews, Oliote, Yuncong.15, Torero X, imixlot, Yaoguan, Amyuns, dicesnow, Cenda, UKCG, kecooi, RUNFON, Zhanhong Direct, plusA, fengheshun, Atrigger, Dadiii, Yardom, BokenUS, Catchmaik, LittiL, EASERELAX and Cymely;

b.  an award of $100,000.00 in statutory damages against the following eight (8) Defaulting Defendants, totaling $800,000.00: SEENDOM, SANOHAMI, DLUCKY, bason888, Xiaohuoji, LTINTIN, DIYurfeeling and Fshgh;

c.  an award of $150,000.00 in statutory damages against the following three (3) Defaulting Defendants, totaling $450,000.00: NOVOTE, supergogo and twistymagicalpetz;

---

[8] Plaintiffs respectfully submit that Fed. R. Evid. 1006 authorizes the use of a summary sheet such as Exhibit E to the Scully Aff. to establish damages in civil actions such as the instant Action.  (*See also* Complaint, Ex. D.)

13

(Scully Aff., Ex. E.)

Generally, "[t]he lack of information about any of the defendants' sales and profits, and the suspect nature of any information that was provided, make statutory damages particularly appropriate for this case." *Nike, Inc. v. Top Brand Co*., 00 Civ. 8179 (KMW) (RLE), 2006 U.S. Dist. LEXIS 76543, at *6 (S.D.N.Y. Feb. 27, 2006). Specifically, Plaintiffs respectfully submit that their tiered requests for statutory damages based upon the currently known numbers of sales of Counterfeit Products by Defaulting Defendants are appropriate. Plaintiffs reiterate that the number of sales of Counterfeit Products made by Defaulting Defendants as identified in Amazon's discovery response are the lowest possible number of sales. In other words, it is likely that Defaulting Defendants' sales of Counterfeit Products are significantly higher than what has been identified through the limited discovery Plaintiffs were able to obtain. (Scully Aff., ¶¶ 30-33.) Furthermore, Plaintiffs confirmed that each and every Defaulting Defendant wrongfully used the Twisty Petz Mark and/or Twisty Petz Work. (Scully Aff., Ex. E.) Since "the amount of defendants' likely profits from their infringement, the possibility of deterrence, and the need for redress of wrongful conduct are appropriate factors to consider," Plaintiffs respectfully submit that Defaulting Defendants' willful violations of the Lanham Act and Copyright Act make their requests for damages appropriate. *Nike, Inc*., 2006 U.S. Dist. LEXIS 76543 at *6-7. "Moreover, this Court has 'wide discretion' in 'setting the amount of statutory damages.'" *Ontel Prods. Corp. v. Airbrushpainting Makeup Store a/k/a Airbrushespainting et al*., 17-cv-871 (KBF), 2017 Dist. LEXIS 221489, at *3 (S.D.N.Y. June 29, 2017) citing *Fitzgerald Publ'g Co., Inc.*, 807 F.2d at 1116 (internal quotation marks omitted).

In this district, even where there was no concrete information about the defendants' actual sales figures and profits, Courts have not hesitated to award higher statutory damages in favor of

plaintiffs. *See, e.g., Pitbull Prods., Inc. v. Universal Netmedia, Inc.,* No. 07 Civ. 1784 (RMR) (GWG), 2007 U.S. Dist. LEXIS 82201, at *10–*11(S.D.N.Y. Nov. 7, 2007) (awarding plaintiff $250,000.00 per mark for two marks where defendant's conduct was willful and defendant's default "left the Court with no information as to any of the factors relating to the defendants' circumstances," and noting that "Courts have awarded similar damages in other cases in which there was little information as to the defendants' infringement"); *Rodgers v. Anderson*, No. 04 Civ. 1149 (RJH) (AJP), 2005 U.S. Dist. LEXIS 7054, at *8 (S.D.N.Y. Apr. 26, 2005) (awarding $250,000.00 and noting that the amount "is consistent with (indeed, lower than) awards in similar cases," and citing cases); *see also All-Star Mktg. Grp., LLC v. Media Brands Co.*, 775 F. Supp. 2d 613, 624-25 (S.D.N.Y. 2011) (collecting cases awarding between $25,000.00 and $250,000.00 per mark). Awards of $1,000,000.00 and higher have been granted to plaintiffs in similar matters before this Court. *See, e.g., Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 584 (S.D.N.Y. 2002) (awarding $1,000,000 in statutory damages for defendant's infringement of six Louis Vuitton marks, where the record contained no evidence of defendants' sales, nor the number of hits the website received); *Rolex Watch U.S.A., Inc. v. Brown*, No. 01 Civ. 9155 (JGK) (AJP), 2002 U.S. Dist. LEXIS 10054, at *8-9 (S.D.N.Y. June 5, 2002) (where the Defendant sold 10,000 counterfeit watches, the Court found $1,000,000 in statutory damages to be appropriate and sufficient).[9] Here, the tiered requests for statutory damages, ranging from $50,000.00 to $150,000.00, are within the range of awards granted by courts in this district in similar circumstances.[10]

---

[9] *See also, e.g., Mattel, Inc. v. 1994_honeymoon, et al.*, No. 18-cv-10427-KPF, Dkt. 59 (S.D.N.Y. Mar. 27, 2019); *Mattel, Inc. v. 276470, et al.*, No. 18-cv-10440-KPF, Dkt. 62 (S.D.N.Y. Mar. 27, 2019); *Off-White LLC v. A445995685, et al.*, No. 18-cv-2099-LGS-KNF, Dkt. 129 (S.D.N.Y. Nov. 16, 2018).

[10] *See, e.g., Nike, Inc. v. Wu*, 349 F. Supp. 3d 310 (S.D.N.Y. 2018); *Tiffany (NJ) LLC v. Forbse*, No. 11-cv-4976 (NRB), 2015 US Dist. LEXIS 129647, at *10-11 (S.D.N.Y. Sep. 22, 2015); *Gucci Am., Inc. v Curveal Fashion*, No. 09 Civ. 8458 (RJS), 2010 U.S. Dist. LEXIS 5831, at *15 (S.D.N.Y. Jan. 20, 2010); *see also Spin Master Ltd. v. Alan*

**E. PLAINTIFFS ARE ENTITLED TO A POST-JUDGMENT ASSET RESTRAINT, THE TRANSFER OF DEFAULTING DEFENDANTS' FROZEN ASSETS AND POST-JUDGMENT INTEREST ON DEFAULTING DEFENDANTS' FROZEN ASSETS**

Plaintiffs respectfully submit that the Court should provide a post-judgment continuance of the pre-judgment asset restraint imposed on Defaulting Defendants by the TRO and extended through the PI Order because it is necessary to preserve Plaintiffs' right to the relief sought in the Complaint, including an equitable accounting. The Second Circuit expressly affirmed the Court's authority to freeze counterfeiters' assets as a matter of equity and "in favor of plaintiffs seeking an accounting against allegedly infringing defendants in Lanham Act cases" – whether such assets are located in the United States or abroad, and "impos[ed] on a defendant the obligation to disclose and return profits." *Gucci Am. Inc. v. Bank of China*, 768 F.3d 122, 131-32, 137-38 (2d Cir. 2014). The sole reason that Plaintiffs could not obtain an accounting in this action is due to Defaulting

---

*Yuan's Store*, 325 F. Supp. 3d 413, 427-428  (S.D.N.Y. 2018); *Mattel, Inc. v. 1994_honeymoon, et al.*, No. 18-cv-10427-KPF, Dkt. 59 (S.D.N.Y. Mar. 27, 2019); *Mattel, Inc. v. Aaron's Fashion Store, et al.*, No. 18-cv-10437-KPF, Dkt. 79 (S.D.N.Y. Mar. 27, 2019); *Mattel, Inc. v. 276470, et al.*, No. 18-cv-10440-KPF, Dkt. 62 (S.D.N.Y. Mar. 27, 2019); *Tapestry, Inc., et al. v. baoqingtianff, et al.*, No. 18-cv-7650-PAE, Dkt. 34 (S.D.N.Y. Jan. 8, 2019); *Mattel, Inc. v. 86755, et al.*, No. 18-cv-8825-JSR, Dkt. 47 (S.D.N.Y. Dec. 17, 2018); *Ideavillage Prods. Corp. v. 711 Market, et al.*, No. 18-cv-7832-JMF, Dkt. 61 (S.D.N.Y. Dec. 12, 2018); *Wow Virtual Reality, Inc. v. BIENBEST, et al.*, No. 18-cv-3305-VEC, Dkts. 210-289, 302 (S.D.N.Y. Dec. 5, 2018); *Moose Toys Pty Ltd., et al. v. 963, et al.*, No. 18-cv-2187-VEC, Dkts. 160-251, 257 (S.D.N.Y. Nov. 30, 2018); *Off-White LLC v. A445995685, et al.*, No. 18-cv-2099-LGS-KNF, Dkt. 129 (S.D.N.Y. Nov. 16, 2018); *Ideavillage Prods. Corp. v. 29shyans2012, et al.*, 18-cv-6266 (AT), Dkt. No. 49 (S.D.N.Y. Nov. 6, 2018); *WowWee Group Limited, et al. v. A249345157, et al.*, No. 17-cv-9358 (VEC), Dkts. 46-179 (S.D.N.Y. July 31, 2018); *Ideavillage Prods. Corp. v. Bling Boutique Store, et al.*, No. 16-cv-9039 (KMW), Dkt. 92 (S.D.N.Y. July 24, 2018); *Allstar Marketing Group, LLC v. _GB Housewear Store, et al.*, No. 17-cv-7596 (SHS), Dkt. 92 (S.D.N.Y. July 9, 2018); *Rovio Entertainment Ltd. and Rovio Animation Oy v. Best Baby and Kid Store, et al.*, No. 17-cv-4884 (KPF), Dkt. 38 (S.D.N.Y. June 28, 2018); *JLM Couture, Inc. v. Aimibridal, et al.*, No. 18-cv-1565 (JMF), Dkt. 49 (S.D.N.Y. June 7, 2018); *HICKIES, Inc. v. SHOP1668638 Store a/k/a Professional Shoes Company, et al.*, No. 17-cv-9101 (ER), Dkt. 22 (S.D.N.Y. May 4, 2018); *Ideavillage Prod.s Corp. v. Dongguan Opete Yoga Wear Manufacturer Co., LTD., et al.*, No. 17-cv-9099 (JMF), Dkt. 34 (S.D.N.Y. March 1, 2018); *Ideavillage Prods. Corp. v. Chinafocus, et al.*, No. 17-cv-3894 (RA), Dkt. 50 (S.D.N.Y. Feb. 9, 2018); *Ontel Prods. Corp. v. Auto Mall, et al.*, No. 17-cv-5190 (AT), Dkt. 36 (S.D.N.Y. Nov. 27, 2017); *Rovio Entertainment Ltd. and Rovio Animation Oy v. Angel Baby Factory d/b/a Angelbaby_Factory, et al.*, No. 17-cv-1840 (KPF), Dkt. 65 (S.D.N.Y. Sept. 13, 2017); *Ontel Prods. Corp. v. Airbrushpainting Makeup Store, et al.*, No. 17-cv-871 (KBF), Dkt. 40 (S.D.N.Y. June 29, 2017); *Belstaff Grp. SA v. Doe*, No. 15-cv-2242 (PKC) (MHD), 2015 U.S. Dist. LEXIS 178124, at *10 (S.D.N.Y. June 18, 2015) and *Tory Burch LLC v. Yong Sheng Int'l Trade Co.*, No. 10 Civ. 9336 (DAB), 2011 U.S. Dist. LEXIS 158882, at *8 (S.D.N.Y. May 13, 2011).

Defendants' complete failure to participate in this action or comply with discovery which made any calculation on Plaintiffs' claim for an accounting impossible. *See Tiffany (NJ) LLC v. Forbse*, No. 11-cv-4976 (NRB), 2015 US Dist. LEXIS 129647, at *8, 10-11 (S.D.N.Y. Sep. 22, 2015). Defaulting Defendants counterfeiters' willful refusal to participate in this action should not allow them to avoid the penalty imposed by pre-judgment asset restraint which was expressly authorized by the Second Circuit in *Gucci*[11] as a result of the Lanham Act's express grant of a right to an equitable accounting, by ignoring the Court's expedited discovery orders and forcing Plaintiffs to elect statutory damages. *See* Gucci *Am. Inc.*, 768 F.3d 122.

There is no question that the post-judgment relief requested by Plaintiffs in the instant action can be granted through N.Y. C.P.L.R. § 5222, as incorporated by Fed. R. Civ. P. 69.[12] Pursuant to N.Y. C.P.L.R. §§ 5201-5253, once a defendant is found liable and a money judgment is rendered against a defendant a District Court sitting in New York has the power to restrain the defendant's assets. *Cruz v. TD Bank, N.A.*, 711 F.3d 261, 264 (2d Cir. 2013); *see also Interpool Ltd. v. Patterson*, No. 89 Civ. 8501 (LAK), 1995 U.S. Dist. LEXIS 2920, at *1 (S.D.N.Y. Mar. 13, 1995) (ordering restraint pursuant to N.Y. C.P.L.R. § 5222, finding that "[a] New York judgment creditor is entitled to a restraining notice on the debtor as a matter of right"). Further, the Second Circuit has also affirmed the authority of the district courts to order a post-judgment injunction on a claim for money damages where the judgment debtor sought to evade payment to the judgment creditor. *See Pashaian v. Eccelston Props., Ltd.*, 88 F.3d 77, 86-87 (2d Cir. 1996).

Accordingly, N.Y. C.P.L.R. § 5222, which permits issuance of a restraining notice against the judgment debtor that, with certain exceptions not relevant here, prohibits disposition or transfer

---

[11] *See Gucci Am. Inc. v. Bank of China*, 768 F.3d 122, 130 (2d Cir. 2014).
[12]*See e.g. Blue v. Cablevision Sys., N.Y. City Corp.*, No. 00-3836, 2006 U.S. Dist. LEXIS 96449, at *2 n.1 (E.D.N.Y. July 5, 2007).

of property "until the judgment … is satisfied," allows the Court to maintain the Post-Judgment Asset Freeze requested by Plaintiffs. *See* N.Y. C.P.L.R. § 5222(b); *see also Dawson v. Krolikowski*, 530 N.Y.S.2d 931, 935 (Sup. Ct. 1988) ("[O]nce a money judgment is entered, restraining notices may be served pursuant to CPLR 5222 in order to prevent the transfer of property." (quotation marks omitted)).

Moreover, courts in this Circuit have commonly and consistently granted the post-judgment relief requested by Plaintiffs pursuant to the Federal Rules, New York State Civil Procedure and the Court's inherent equitable power to do so.[13] While under the C.P.L.R., a successful plaintiff can serve a C.P.L.R. § 5222 restraining notice on the judgment debtor immediately after entry of judgment, effectively continuing any prejudgment restraint, pursuant to

---

[13] *See, e.g., Nike, Inc. v. Wu,* 349 F. Supp. 3d 310 (S.D.N.Y. 2018); *Tiffany (NJ) LLC v. Forbse,* No. 11-cv-4976 (NRB), 2015 US Dist. LEXIS 129647, at *10-11 (S.D.N.Y. Sep. 22, 2015); *Gucci Am., Inc. v. Curveal Fashion,* No. 09 Civ. 8458 (RJS), 2010 U.S. Dist. LEXIS 5831, at *15 (S.D.N.Y. Jan. 20, 2010); *see also Spin Master Ltd. v. Alan Yuan's Store,* 325 F. Supp. 3d 413, 427-428 (S.D.N.Y. 2018); *Mattel, Inc. v. 1994_honeymoon, et al.,* No. 18-cv-10427-KPF, Dkt. 59 (S.D.N.Y. Mar. 27, 2019); *Mattel, Inc. v. Aaron's Fashion Store, et al.,* No. 18-cv-10437-KPF, Dkt. 79 (S.D.N.Y. Mar. 27, 2019); *Mattel, Inc. v. 276470, et al.,* No. 18-cv-10440-KPF, Dkt. 62 (S.D.N.Y. Mar. 27, 2019); *Tapestry, Inc., et al. v. baoqingtianff, et al.,* No. 18-cv-7650-PAE, Dkt. 34 (S.D.N.Y. Jan. 8, 2019); *Mattel, Inc. v. 86755, et al.,* No. 18-cv-8825-JSR, Dkt. 47 (S.D.N.Y. Dec. 17, 2018); *Ideavillage Prods. Corp. v. 711 Market, et al.,* No. 18-cv-7832-JMF, Dkt. 61 (S.D.N.Y. Dec. 12, 2018); *Wow Virtual Reality, Inc. v. BIENBEST, et al.,* No. 18-cv-3305-VEC, Dkts. 210-289, 302 (S.D.N.Y. Dec. 5, 2018); *Moose Toys Pty Ltd., et al. v. 963, et al.,* No. 18-cv-2187-VEC, Dkts. 160-251, 257 (S.D.N.Y. Nov. 30, 2018); *Off-White LLC v. A445995685, et al.,* No. 18-cv-2099-LGS-KNF, Dkt. 129 (S.D.N.Y. Nov. 16, 2018); *Ideavillage Prods. Corp. v. 29shyans2012, et al.,* 18-cv-6266 (AT), Dkt. No. 49 (S.D.N.Y. Nov. 6, 2018); *WowWee Group Limited, et al. v. A249345157, et al.,* No. 17-cv-9358 (VEC), Dkts. 46-179 (S.D.N.Y. July 31, 2018); *Ideavillage Prods. Corp. v. Bling Boutique Store, et al.,* No. 16-cv-9039 (KMW), Dkt. 92 (S.D.N.Y. July 24, 2018); *Allstar Marketing Group, LLC v. _GB Housewear Store, et al.,* No. 17-cv-7596 (SHS), Dkt. 92 (S.D.N.Y. July 9, 2018); *Rovio Entertainment Ltd. and Rovio Animation Oy v. Best Baby and Kid Store, et al.,* No. 17-cv-4884 (KPF), Dkt. 38 (S.D.N.Y. June 28, 2018); *JLM Couture, Inc. v. Aimibridal, et al.,* No. 18-cv-1565 (JMF), Dkt. 49 (S.D.N.Y. June 7, 2018); *HICKIES, Inc. v. SHOP1668638 Store a/k/a Professional Shoes Company, et al.,* No. 17-cv-9101 (ER), Dkt. 22 (S.D.N.Y. May 4, 2018); *Ideavillage Prod.s Corp. v. Dongguan Opete Yoga Wear Manufacturer Co., LTD., et al.,* No. 17-cv-9099 (JMF), Dkt. 34 (S.D.N.Y. March 1, 2018); *Ideavillage Prods. Corp. v. Chinafocus, et al.,* No. 17-cv-3894 (RA), Dkt. 50 (S.D.N.Y. Feb. 9, 2018); *Ontel Prods. Corp. v. Auto Mall, et al.,* No. 17-cv-5190 (AT), Dkt. 36 (S.D.N.Y. Nov. 27, 2017); *Rovio Entertainment Ltd. and Rovio Animation Oy v. Angel Baby Factory d/b/a Angelbaby_Factory, et al.,* No. 17-cv-1840 (KPF), Dkt. 65 (S.D.N.Y. Sept. 13, 2017); *Ontel Prods. Corp. v. Airbrushpainting Makeup Store, et al.,* No. 17-cv-871 (KBF), Dkt. 40 (S.D.N.Y. June 29, 2017); *Belstaff Grp. SA v. Doe,* No. 15-cv-2242 (PKC) (MHD), 2015 U.S. Dist. LEXIS 178124, at *10 (S.D.N.Y. June 18, 2015) and *Tory Burch LLC v. Yong Sheng Int'l Trade Co.,* No. 10 Civ. 9336 (DAB), 2011 U.S. Dist. LEXIS 158882, at *8 (S.D.N.Y. May 13, 2011).

Fed. R. Civ. P. 62(a), "no execution may issue on a judgment, nor may proceedings be taken to enforce it, until 14 days have passed after its entry." *See* Fed. R. Civ. P. 62(a). Accordingly, the issuance of a final judgment without continuing the asset restraint would give Defaulting Defendants, whose assets are properly restrained prejudgment, a 14-day window in which to conceal and dissipate their assets merely by virtue of their willful default and refusal to appear in this action and/or comply with this Court's discovery orders. Post-judgment asset restraints entered to aid in the enforcement of a judgment, ensure the availability of relief under the Lanham Act and prevent defendants who have defaulted in similar cases from disposing of their assets upon entry of final judgment. *See Forbse*, 2015 US Dist. LEXIS 129647, at *10-11. Here, there remains a significant risk that Defaulting Defendants will dispose of, transfer and/or hide their ill-gotten assets to which Plaintiffs are entitled if Defaulting Defendants' Frozen Assets do not remain frozen post-judgment. (Scully Dec., ¶ 13.) As the uncontroverted evidence demonstrates, Defaulting Defendants are foreign individuals or entities that have engaged in counterfeiting and infringing activities. (*See* Complaint, Ex. D.) They have failed to answer or otherwise formally appear in this Action or comply with the expedited discovery ordered in the TRO and PI Order. (Yamali DJ Aff., ¶ 25.) This risk is not lessened by entry of judgment, but likely elevated. *Forbse*, 2015 US Dist. LEXIS 129647, at *10 ("[T]he need for the injunction is clear: without this relief, defendants would have available a fourteen-day window in which to hide their assets" and "[t]he risk that they might do so, which in part justified the preliminary injunction, is not lessened by entry of judgment.").[14] Plaintiffs respectfully request the Court continue the Asset Restraint ordered in the TRO and PI Order and grant the Post-Judgment Asset Freeze Order.

---

[14] A post decision, prejudgment asset restraint is proper and "expressly provided for in CPLR 5229, which is applicable to this case under Fed. R. Civ. P. 64 and 69." *Loew v. Kolb*, No. 03 Civ. 5064 (RCC), 2003 U.S. Dist. LEXIS 15628, at *5 (S.D.N.Y. Sept. 8, 2003); *see also Sequa Capital Corp. v. Nave*, 921 F. Supp. 1072, 1076 (S.D.N.Y. 1996)

Additionally, Plaintiffs respectfully request the Court grant an order authorizing the transfer of Defaulting Defendants' Frozen Assets in satisfaction of the Judgment. In *AW Licensing*, the plaintiff sought relief against online counterfeiters, after entering both temporary and preliminary injunctive orders, the Court ultimately granted the plaintiff's motion for default judgment, holding, *inter alia*, that each defendant was liable for federal trademark counterfeiting and infringement. *Wang Bao*, No. 15-cv-1373 (KBF), 2016 U.S. Dist. LEXIS 101150, at *3 (S.D.N.Y. Aug. 2, 2016). In addition to awarding statutory damages for willful counterfeiting and entering a permanent injunction, the Hon. Katherine B. Forrest issued the following orders:

> ORDERED that monies currently restrained by Defendants' accounts held by PayPal, Inc. ("PayPal") be released to Alexander Wang as partial payment of the above-mentioned damages;
>
> . . .
>
> ORDERED that after twenty-one (21) days following the service of this Judgment and Permanent Injunction on such Defendant and Account Holder, Account Holder shall *transfer all monies in the restrained accounts to Alexander Wang*, unless the Defendant has filed with the Court and served upon Plaintiffs' counsel a request that such monies be exemption from this Order.

*See id.*, at *19-20 (emphasis added). In another recent lawsuit involving China-based online counterfeiters, the Court granted the plaintiff's motion for summary judgment, awarding the plaintiff statutory damages and entering a permanent injunction against the defaulting defendants. *Spin Master Ltd. v. Alan Yuan's Store*, No. 17-cv-7422 (DLC), 2018 U.S. Dist. LEXIS 109333 (S.D.N.Y. June 29, 2018). In that case, the Hon. Denise L. Cote also held that:

> Spin has demonstrated that the defendants are likely to hide their assets. The restraint shall continue until plaintiffs can enforce and satisfy the judgment entered by this Court.

("CPLR 5229 is a remedy within the meaning of FRCP 64"). Rule 64 makes "every remedy … available that, under the law of [New York], provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). Rule 69 provides that the procedure "in proceedings … in aid of judgment or execution … must accord with the procedure of [New York]," Fed. R. Civ. P. 69(a)(1).

20

> Similarly, *Spin is entitled to the transfer of the frozen assets to the plaintiffs as full or, when relevant, partial satisfaction of the damages award*. *Id.*, at *25-26 (emphasis added).

While Judge Forrest never explained the basis for entering an asset transfer order, nor did Judge Cote, their rulings follow a long tradition of decisions and orders in this Court which provide, in tandem with an award of statutory damages, an asset transfer order.[15]

In a 2010 case involving online sales of counterfeit luxury goods, the Hon. Richard J. Sullivan entered a default judgment against the defendants, issued a permanent injunction and awarded the plaintiff statutory damages. *Gucci Am., Inc. v. Curveal Fashion*, No. 09 Civ. 8458 (RJS), 2010 U.S. Dist. LEXIS 5831, at *15 (S.D.N.Y. Jan. 20, 2010).   Judge Sullivan simultaneously issued an order, "in accordance with Rule 64 of the Federal Rules of Civil Procedure, 15 U.S.C. § 1116(a), and this Court's inherent equitable power to issue remedies ancillary to its authority to provide final relief,"[16] transferring the defendants' frozen assets to the plaintiff in satisfaction of the Court's damages awards:

> IT IS FURTHER ORDERED AND ADJUDGED THAT, *in accordance with Rule 64 of the Federal Rules of Civil Procedure, 15 U.S.C. § 1116(a), and this Court's inherent equitable power to issue remedies ancillary to its authority to provide final relief*, all of Defendants' asset holders -- defined as any banks, savings and loan associations, credit card companies, credit card processing agencies, or other financial institutions or agencies that engage in the transfer of real or personal property, and all persons acting in concert or in participation with any of Defendants, who are in possession of Defendants' assets -- who receive notice of this order by personal service or otherwise are ordered to liquidate those

---

[15] Subsequently, in *Ontel Products Corporation,* a 2017 matter analogous to the instant action, Judge Forrest requested that the plaintiff provide supplemental briefing regarding the issuance of an order authorizing the transfer of assets in satisfaction of a monetary judgment. *Airbrushpainting Makeup, et al.*, No. 17-cv-871 (KBF), Dkt. 36 (S.D.N.Y. May 31, 2017).  In that case, the plaintiff relied upon the authority and reasoning in *Gucci Am., Inc. v. Curveal Fashion*, No. 09 Civ. 8458 (RJS), 2010 U.S. Dist. LEXIS 5831 (S.D.N.Y. Jan. 20, 2010), discussed *supra*. *See id.*  Ultimately, Judge Forrest entered an order transferring the defendants' restrained assets in satisfaction of the statutory damages awarded by the Court. *See id.*, at Dkt. 40 ("Given the difficulties plaintiff would have executing this judgment, the Court also hereby GRANTS plaintiff's motion at ECF No. 36 for a post-judgment restraining order pursuant to Federal Rule of Civil Procedure 64 and *directs that all monies associated with the remaining defendants' currently restrained accounts be released to plaintiff up to the amount of the judgment per defendant,* i.e., $50,000.") (emphasis added).

[16] This Court's inherent equitable powers to issue remedies ancillary to its authority to provide final relief derives from the All Writs Act. 28 U.S.C.S. § 1651 ("(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.").

of Defendants' assets -- defined as any money, stocks, bonds, real or personal property, or other assets of Defendants -- that have been previously identified as frozen or otherwise restrained in compliance with the Court's October 23, 2009 Order, and pay the value of such Defendants' assets to Plaintiffs in partial satisfaction of the damages award. . . .

IT IS FURTHER ORDERED AND ADJUDGED THAT *in accordance with Rule 64 of the Federal Rules of Civil Procedure, 15 U.S.C. § 1116(a), and this Court's inherent equitable power to issue remedies ancillary to its authority to provide final relief*, in addition to liquidating the Defendants' assets identified in the preceding paragraph and paying them to Plaintiffs as set forth above, any person currently holding any other assets of Defendants and any persons who come into the possession of Defendants' assets who receive actual notice of this Order by personal service, registered or certified mail, or other means reasonably calculated to give actual notice are permanently restrained and enjoined from transferring, disposing of, secreting, or otherwise paying or transferring into or out of any accounts associated with or utilized by any of Defendants any of Defendants' assets that may be identified in the future and/or that have not yet been frozen, without prior approval of the Court, and shall respond to an information subpoena consisting of written questions within seven days of its receipt. To the extent that such additional of Defendants' assets may be necessary to satisfy any remaining unpaid portions of the damages award, Defendants' asset holders are directed to liquidate Defendants' assets and take such other steps as may be reasonable and appropriate to pay the value of Defendants' assets to Plaintiffs up to the amount of the damages award. Plaintiffs shall not collect any assets in excess of the amount of the damages award and shall promptly return any funds received in excess of the damages award to Defendants.  *Id.* (emphasis added).

In line with Judge Forrest, Judge Cote and Judge Sullivan's holdings, this Court regularly orders that all monies or assets in any accounts associated with or utilized by the defendants in counterfeiting cases, both previously restrained and newly discovered, be released and transferred to the plaintiff in satisfaction of the damages awarded in the case until the plaintiff has recovered the full amount owed.[17]

Alternatively, should the Court not find authority under Rule 64 of the Federal Rules of Civil Procedure, 15 U.S.C. § 1116(a), and this Court's inherent equitable power to issue remedies ancillary to its authority to provide final relief to order the asset transfer, Plaintiffs respectfully direct the Court to Fed. R. Civ. P. 69(a) and N.Y. C.P.L.R. § 5225. Pursuant to Rule 69(a), "post-

---

[17] *See supra* fn. 13.

judgment efforts to execute on a money judgment [must] comply with the procedural law of the

forum state — unless a federal statute dictates to the contrary. The Lanham Act contains no such

instruction. Accordingly, the applicable statute is N.Y. C.P.L.R. § 5225. *Tiffany (NJ) LLC v. Dong*,

2013 U.S. Dist. LEXIS 114986, at *28 (S.D.N.Y. Aug. 9, 2013).

> Where property is in possession of a judgment debtor, Section 5225 permits a court,[u]pon motion of the judgment creditor, upon notice to the judgment debtor, [and] where it is shown that the judgment debtor is in possession or custody of money or other personal property in which he has an interest, ... [to] order that the judgment debtor pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff.

*Arrowhead Capital Fin., Ltd. v. Seven Arts Entm't, Inc.*, No. 14 Civ. 6512 (KPF), 2017 U.S. Dist.

LEXIS 125068, at *7-8 (S.D.N.Y. Aug. 8, 2017); N.Y. C.P.L.R. § 5225(a).

And where property is not in the possession of a judgment debtor, Section 5225 authorizes

a court to compel a nonparty to surrender a judgment debtor's property:

> [u]pon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee . . . .

N.Y. C.P.L.R. § 5225.

Although the state rule suggests that a special proceeding must be commenced, the Federal

Rules of Civil Procedure make no mention of special proceedings.  Federal courts in New York

have deemed the C.P.L.R. special proceeding requirement satisfied when a plaintiff proceeds by

complaint or motion against the third party holding a judgment debtor's assets. *See id*.; *see also,*

*e.g., Northern Mariana Islands v. Millard*, 845 F. Supp. 2d 579, 581 (S.D.N.Y. 2012) (citing

*Mitchell v. Lyons Prof'l Servs., Inc.*, 727 F. Supp. 2d 120, 122-23 (E.D.N.Y. 2010) ("Nearly every court in this Circuit to consider the issue has held that parties can bring a motion under [Rule] 69(a), rather than instituting a special proceeding under the New York State law.")) (additional citation omitted); *CSX Transp., Inc. v. Emjay Envtl. Recycling, LTD.*, No. 12-CV-1865, 2016 U.S. Dist. LEXIS 23014, at *3 (E.D.N.Y. Feb. 25, 2016) (noting that the argument that a turnover order must be brought by plenary action "is easily disregarded"); *S.E.C. v. Colonial Inv. Mgmt. LLC*, No. 07 Civ. 8849 (PKC), 2010 U.S. Dist. LEXIS 108063, at *2 (S.D.N.Y. Oct. 6, 2010).

Section 5201, which describes the assets that are subject to enforcement under New York law has made subject to enforcement, and are therefore available to judgment creditors' seeking to collect under § 5225. *Arrowhead Capital Fin., Ltd.*, 2017 U.S. Dist. LEXIS 125068, at *8-9; *see also* N.Y. C.P.L.R. § 5201. According to this provision, "[a] money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested, unless it is exempt from application to the satisfaction of the judgment." *Id.* at 8*; see also* N.Y. C.P.L.R. § 5201(b). Such property need not be located in New York; "a New York court with personal jurisdiction over a defendant may order him to turn over out-of-state property" if the defendant "is a judgment debtor or a garnishee." *Id.*at 8 (citing *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 541 (2009)). Finally, no third parties have raised any issue regarding Plaintiffs' requests either in this case or when previously ordered by judges in this district in similar cases.[18]

---

[18] *See, e.g., Off-White v. ^_^Warm House^_^ STORE, et al.*, No. 17-cv-8872-GBD-GWG, Dkt. 85 (S.D.N.Y. Jan. 17, 2019); *Tapestry, Inc., et al. v. baoqingtianff, et al.*, No. 18-cv-7650-PAE, Dkt. 34 (S.D.N.Y. Jan. 8, 2019); *Mattel, Inc. v. 86755, et al.*, No. 18-cv-8825-JSR, Dkt. 47 (S.D.N.Y. Dec. 17, 2018); *Ideavillage Prods. Corp. v. 711 Market, et al.*, No. 18-cv-7832-JMF, Dkt. 61 (S.D.N.Y. Dec. 12, 2018); *Wow Virtual Reality, Inc. v. BIENBEST, et al.*, No. 18-cv-3305-VEC, Dkts. 210-289, 302 (S.D.N.Y. Dec. 5, 2018); *Moose Toys Pty Ltd., et al. v. 963, et al.*, No. 18-cv-2187-VEC, Dkts. 160-251, 257 (S.D.N.Y. Nov. 30, 2018); *Off-White LLC v. A445995685, et al.*, No. 18-cv-2099-LGS-KNF, Dkt. 129 (S.D.N.Y. Nov. 16, 2018); *Ideavillage Prods. Corp. v. 29shyans2012, et al.*, 18-cv-6266 (AT), Dkt. No. 49 (S.D.N.Y. Nov. 6, 2018); *WowWee Group Limited, et al. v. Haoqin, et al.*, No. 17-cv-9893-WHP-KNF, Dkt.

Statutory damages are necessary and appropriate here, in part, to discourage defendants from continuing to engage in their illicit conduct. Without the issuance of a post-judgment asset transfer order, the statutory damages awards become meaningless – to use a common colloquialism, all bark but no bite.  Simply put, if the Court denies Plaintiffs' respectful requests for an order transferring Defendants' Frozen Assets in partial or complete satisfaction of the statutory damages awarded to it, not only was the extensive motion practice futile, the deterrent purpose of statutory damages contemplated by Congress will be undermined. *See* 142 Cong Rec H 5776, at 1-2, 10 (1995). Plaintiffs respectfully submit that denying a post-judgment asset transfer order would result in a Pyrrhic victory, effectively denying Plaintiffs of the money judgments to which they are entitled. Therefore, Plaintiffs respectfully submit that the Court should enter an order authorizing the transfer of Defaulting Defendants' Frozen Assets in satisfaction of the Judgment.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Default Judgment and a Permanent Injunction in its entirety.


Dated: September 17, 2019             Respectfully submitted,

                                              EPSTEIN DRANGEL LLP

---

162 (S.D.N.Y. Sept. 28, 2018); *WowWee Group Limited, et al. v. A249345157, et al.,* No. 17-cv-9358 (VEC), Dkts. 46-179 (S.D.N.Y. July 31, 2018); *Ideavillage Prods. Corp. v. Bling Boutique Store, et al.,* No. 16-cv-9039 (KMW), Dkt. 92 (S.D.N.Y. July 24, 2018); *Allstar Marketing Group, LLC v. _GB Housewear Store, et al.,* No. 17-cv-7596 (SHS), Dkt. 92 (S.D.N.Y. July 9, 2018); *Rovio Entertainment Ltd. and Rovio Animation Oy v. Best Baby and Kid Store, et al.,* No. 17-cv-4884 (KPF), Dkt. 38 (S.D.N.Y. June 28, 2018); *JLM Couture, Inc. v. Aimibridal, et al.,* No. 18-cv-1565 (JMF), Dkt. 49 (S.D.N.Y. June 7, 2018); *HICKIES, Inc. v. SHOP1668638 Store a/k/a Professional Shoes Company, et al.,* No. 17-cv-9101 (ER), Dkt. 22 (S.D.N.Y. May 4, 2018); *Ideavillage Prod.s Corp. v. Dongguan Opete Yoga Wear Manufacturer Co., LTD., et al.,* No. 17-cv-9099 (JMF).

BY:    /s/ Brieanne Scully
       Brieanne Scully (BS 3711)
       bscully@ipcounselors.com
       Jason M. Drangel (JD 7204)
       jdrangel@ipcounselors.com
       Ashly E. Sands (AS 7715)
       asands@ipcounselors.com
       Danielle S. Yamali (DY 4228)
       dfutterman@ipcounselors.com
       60 East 42nd Street, Suite 2520
       New York, NY 10165
       Telephone:     (212) 292-5390
       Facsimile:     (212) 292-5391
       *Attorneys for Plaintiffs*
       *Spin Master Ltd.*
       *and Spin Master, Inc.*

26